**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>$41,400.00 in US Currency,<br><br>Defendant. | No. CV-06-01299-PHX-ROS<br><br>**ORDER** |

Claimant Christopher Wayne Francis seeks relief from the judgment entered on January 31, 2007, that concluded $41,400 was subject to forfeiture. (Doc. 14). Francis now claims he was abandoned by the attorney he hired to contest the forfeiture and his incarceration rendered him "unable to obtain the documentary evidence" that would have prevented forfeiture of the money. (Doc. 19 at 11). Even assuming Francis' attorney abandoned him, Francis has not met the high bar for obtaining relief from an eleven-year-old judgment.

## BACKGROUND

On May 15, 2006, the United States of America filed a "Verified Complaint for Forfeiture In Rem." (Doc. 1). That complaint alleged Phoenix Police Detectives had encountered Francis at Sky Harbor Airport shortly after Francis arrived on a flight from Florida. During that encounter the police discovered Francis was carrying a total of $41,400 in U.S. currency. Most of the currency was "concealed within Francis' shoes [and] placed in heat sealed bags." (Doc. 1 at 5). The currency was seized and a police

dog later "gave a positive alert" to the currency, indicating the currency had been around "marijuana, methamphetamine, cocaine [or] heroin." (Doc. 1 at 15).

Francis, through attorney T.S. Hartzell, filed an answer to the complaint. (Doc. 6). That answer alleged the currency "had a legitimate and explainable origin" and it was not "the proceeds of a criminal offense." (Doc. 6 at 3). Francis' answer sought the "immediate return of the claimed currency." (Doc. 6 at 3). Francis also filed, again through his attorney, a "Statement of Interest or Right Against Property." (Doc. 7). In that document Francis claimed he was "the owner of $30,000 of the $41,400" that had been seized. (Doc. 7 at 1). Francis stated the currency had been "obtained from the sale of real property" and he was transporting the money to Phoenix "for the purpose of buying a tow truck for his automobile repair business."

In August 2006, the United States propounded discovery requests. Francis did not respond. In November 2006, the United States moved for summary judgment. (Doc. 13). A portion of that motion depended on Francis' failure to respond to the discovery requests. According to the United States, Francis' failure to respond to the discovery requests meant he had admitted the seized currency was "the proceeds of the illegal sale and distribution of controlled substances" and that he was "a courier transporting U.S. currency, used or intended to be used to purchase controlled substances." (Doc. 13 at 13). Francis did not file an opposition to the motion for summary judgment.

On January 31, 2007, the Court granted the United States' motion. In doing so, the Court noted Francis' failure to respond to the motion meant the Court only had the United States' "uncontroverted facts to examine." (Doc. 14 at 2). And under those facts, the currency was subject to forfeiture. In particular, Francis' failure to respond to the discovery requests meant he had admitted the crucial facts. Francis did not appeal.

Over two years later—on July 14, 2009—Francis filed a pro se "Request for Status of Case Pending and/or Not Pending." (Doc. 17). That request explained there had been a "breakdown in communication with retained counsel (T.S. Hartzell)" such that Francis was unaware whether the case had been resolved. The United States responded to that

request by providing a brief history of the case, including a clear statement that the currency had been "forfeited . . . and disposed of according to law" as of February 1, 2007. (Doc. 16 at 3). The United States mailed its response to Francis. On July 16, 2009, the Court denied Francis' request for a status report as moot in light of the United States' response. (Doc. 18). The Court mailed a copy of its Order to Francis.

Francis took no additional action for a little over eight years. It was not until October 30, 2017, that Francis filed the now-pending "Motion for Relief from Judgment; Verified Rule 60 Fed. R. Civ. P." (Doc. 19). Francis argues he "defaulted by no fault of his own and can prove with documentation" that the seized currency came from a legal source. (Doc. 19 at 1). Francis further states the United States obtained summary judgment solely "through the mistake or inadvertence or neglect of Francis' attorney." (Doc. 19 at 5). As for why Francis himself did not act sooner, Francis states he "has been incarcerated since 2008" and was "unable to obtain the documentary evidence which corroborates his right to the currency." (Doc. 19 at 7). Francis attached to his motion evidence that he sold a home in 2004 and documents allegedly showing Francis was operating an automobile repair shop around that same time.

The United States opposes the motion and claims Francis waited far too long to seek relief from the judgment. In addition, the United States asserts the motion fails on the merits. In his reply, Francis focuses on his incarceration since 2008. According to Francis, that incarceration rendered him "powerless to obtain" the documentation proving his entitlement to the currency. Francis also reiterates his position that he should not be responsible for Hartzell's complete abandonment. (Doc. 22 at 2).

**ANALYSIS**

Francis argues his motion is brought pursuant to Federal Rule of Civil Procedure 60(b) but he does not clearly identify the subsection of that rule he believes should apply. Rule 60(b) lists the six bases for motions seeking relief from a final judgment. Those bases are:
    1)     mistake, inadvertence, surprise, or excusable neglect;
    2)     newly discovered evidence that, with reasonable diligence, could not

have been discovered in time to move for a new trial under Rule 59(b);
3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
4) the judgment is void;
5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
6) any other reason that justifies relief.

A motion under bases one through three must be filed within one year of "the entry of the judgment." Fed. R. Civ. P. 60(c). And a motion under bases four through six must be filed "within a reasonable time." *Id.* Because it has been more than one year since the entry of judgment, the Court has no power to grant relief under Rule 60(b)(1), (2), or (3). *See Nevitt v. United States*, 886 F.2d 1187, 1188 (9th Cir.1989) ("Since the Rule 60(b)(2) motion was not filed within one year of entry of judgment, the district court lacked jurisdiction to consider it."). And Francis does not argue the judgment was void under 60(b)(4) or that it has somehow been satisfied or released under 60(b)(5). Thus, Francis' only possible basis for relief is Rule 60(b)(6).

"To receive relief under Rule 60(b)(6), a party must demonstrate extraordinary circumstances which prevented or rendered him unable to prosecute [his case]." *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010). Attorney misconduct can qualify as extraordinary circumstances when the attorney's behavior constituted "gross negligence." *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1169 (9th Cir. 2002). And "gross negligence" might exist when an attorney "virtually abandon[s]" his client. *Id.* at 1170. Here, Francis alleges his attorney abandoned him immediately after filing the answer to the forfeiture complaint. Francis has not, however, provided the details of that abandonment. Without such details it is not possible to determine the attorney was grossly negligent. Thus, Francis has not carried his burden of proving his attorney acted with gross negligence such that his attorney's actions constitute "extraordinary circumstances" meriting relief. But even if the Court were to assume Francis' attorney had been grossly negligent, Francis would not be entitled to relief.

Assuming Francis' attorney committed gross negligence in litigating this case in

2006, Francis has not explained the entirety of the subsequent delay. The United States moved for summary judgment in November 2006 and the Court entered judgment in January 2007. According to Francis' own statements, he was not incarcerated until 2008. Accordingly, his incarceration could not have prevented him from seeking relief prior to 2008. Moreover, after he was incarcerated Francis filed a request for "case status" in July 2009. Francis received information that the case had been resolved but Francis took no immediate action. Instead, Francis waited approximately eight years to request relief. Francis has not offered sufficient evidence establishing he was unable to take earlier action. In particular, Francis' incarceration is not enough to excuse a delay of this length. *Cf. Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (noting "[o]rdinary prison limitations on . . . access to law library and copier" were not "extraordinary" circumstances justifying untimely habeas filing). The extreme delay in Francis seeking relief is fatal to his request. *Cf. Lal v. California*, 610 F.3d 518, 526 (9th Cir. 2010) (holding individual sought Rule 60 relief "diligently" by filing motion only four months after learning case had been dismissed).

Accordingly,

**IT IS ORDERED** the Motion for Relief from Judgment (Doc. 19) is **DENIED**.

Dated this 31st day of July, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge